Our final case of the day is Farrington v. United States. Ms. Eisenman. Thank you, Judge. May it please the Court, Vanessa Eisenman on behalf of Cartavius Farrington. Mr. Farrington's case should be remanded for a simple resentencing because his former appellate counsel rendered ineffective assistance in failing to raise a section 455A issue regarding Judge Bruce. Counsel's performance was deficient both before and after January 2019, which is the point in time at which the government emailed a copy of Atwood's brief and this court's decision in Fowler to Attorney Pollack and offered to reopen briefing in similar cases. If you want to look at this before January 2019, this was when Mr. Farrington's case was still in briefing. By that point, Attorney Pollack had received not only Judge Bruce's ex parte emails and Nixon, but also additional emails. There had been newspaper coverages. Judge Bruce had been removed from all cases in which the government was a party. In short, this was a big deal and it was unreasonable for Attorney Pollack not to at least have researched, considered, evaluated this and she admitted at the end of the judge hearing that she did not do that at any point before January 2019. If she would have researched it, she would have found this court's decision in Herrera-Valdez, in Smith, in Murphy, and in a recent decision in Fowler that clarified the standard of review, none of which would have dissuaded her from further researching the case. If you want to look at- Ms. Eisman, you were relying on Coleman for your argument that it was deficient performance not to even consider it before a certain time. But here, the case is different than Coleman because we know at some point she did consider it. Coleman, there was no evidence that the attorney had considered it at all. Are you asking us to extend Coleman to a situation where we know it was considered? No. I'm really, and I'm sorry if it wasn't clear, I'm really using Coleman just for that first part of the argument. The district court and the magistrate judge kind of partitioned this case or partitioned the facts into what happened before January 2019 and what happened after that. That's the point where she gets the Atwood brief and that's the point where somebody's at least considering this. What the magistrate judge found was that it wasn't deficient performance before January 2019, but it was deficient performance after that. Now, the district court disagreed and overruled that holding, but I just used that same partition that was used in the district court. In the first part of that analysis, I don't think the magistrate judge was right there either. I think it was deficient no matter which one you look at. That's why I use Coleman because before January 2019, no one had ever, and the evidentiary transcript is clear on this. She says she never even considered looking into this. That's where I'm using Coleman. I think that this case is even easier than Coleman because there was so many more analogous cases on the record than positional isomers at the time, which I consider still pretty confusing. This was not confusing. Attorney Pollack even testified that she knew about 455A claims. This was not novel. This was not a change in the law. There were these recent decisions clarifying the standard of review. It was unreasonable considering what a big deal this was to not look into it. There's nothing in the email exchanges where Judge Bruce referred to Mr. Farrington's case, is there? No. Okay. But that was not the case in Atwood either.  And the point is that— Have you talked to your client? Do you understand if we grant your habeas petition here and it goes back for resentencing that he might get more than 240 months? Judge Bruce sentenced him below the guidelines, that there's no guarantee it will— I totally get that. Okay. And have you spoken with your client about that? Oh, yes. Yes, I have.   And he understands that that was the case in Atwood as well, that you're taking a gamble here, but he would like that. He would like that chance. And then after January 2019, again, we have this court's special committee report coming out. We have more news coverage. We have both the Atwood brief and then we've got the government's brief in Atwood, including everything except harmless error, and still nobody tries to reopen the briefing. And we've got these federal rules just for these kind of situations. Certainly, the special committee report would have constituted good cause to move to reopen, as those were findings. And the special committee report specifically mentions appearances and mentions how appearances are important and mentions the news coverage. And it's not just specific to Nixon and it's not just specific to Moser, but that this permeates his entire caseload, which is why he remained unassigned to cases for a full year. So, if there are no other questions, I'll reserve my remaining time. Thank you. Certainly, counsel. Mr. Keenstra. May it please the court. Good morning, Your Honors. Jeff Keenstra on behalf of the United States. The district court didn't err in finding that the defendant received the assistance of counsel on direct appeal that the Sixth Amendment requires. During the time that this case was being briefly argued, as the court found, quote, without question, this is not the sort of issue that every competent attorney would have been expected to raise. And this court's experience confirms that. At the later point after the issue was raised in Atwood, counsel in this case, in fact, considered the issue. She referred it to the trusted colleagues and senior members of her office, who thoroughly considered the issue, which they were also addressing in related context, and came to the professional judgment in their view that this was an issue that was, quote, not likely to succeed. The defendant has failed to meet his burden of establishing that that professional judgment amounted to incompetence under prevailing professional norms, which is the applicable legal standard. Now, as to the defendant's failure to consider arguments, the idea that a mere failure to consider this itself at an early stage gets him across the finish line to establish deficient performance, that's incorrect both legally and factually. Now, first, legally, as the Supreme Court has held and as this court has recognized, even if an admission were inadvertent instead of strategic, that itself isn't sufficient to establish deficient performance because the inquiry is into the objective reasonableness of counsel's performance, not counsel's subjective state of mind or thought processes. In an appeal, counsel's performance is the appellate brief. The appellate brief is what defines the issues that are going to be raised in an appeal. And if a defendant's attorney files the same brief raising the same issues and omitting the same issues as what other competent attorneys would file, then that defendant has received the assistance of counsel. That's exactly what this court held in its opinion in Harris. There, the court assumed that the defense attorney had made an unprofessional error in overlooking a potential categorical approach objection to the minimum sentence in that case. And yet the court recognized in Yarborough and Harrington that an omission itself is not sufficient. And what the court looked at is that even if counsel had considered the issue and if a competent attorney could have given exact same advice to the defendant as the attorney in that case did. And so the- What was the downside to raising this argument? Some of our cases talk about is there a downside and there's no ineffective assistance of counsel if there's a downside of bringing the argument. But what possibly could be the downside here? A couple of things. First is that at the time that this case was being briefed, it was a very novel issue. It would have been, I think, extraordinarily- Let's talk about after the briefing. Sure. Talk about after the oral argument with the special counsel releases the- or the judicial counsel released the special committee report. You know, the Atwood brief was filed. And the government goes on to concede an appearance of impropriety in the briefing on Atwood. But all that happened before this court ruled. What would have been the downside of asking the court to reopen to allow this argument? So a couple of things. First is that counsel exercised their professional judgment as to the likelihood of success. They researched the issue, considered it. And this court expects attorneys to exercise that sort of judgment in bringing issues to this court, especially given the context of this case. The issue had already been fully briefed. So counsel would have had- How about what Judge St. Eve has already said? Things can get worse for Farrington back in the district court. If you were his appellate lawyer, wouldn't you be concerned about the possibility that he would, on remand, get a within-guideline sentence? That's certainly a possibility as well. There are additional strategic concerns relative to the appeal and the appropriate context in which to raise this issue. Basically, if you've got a benefit, you might want to keep it. That's correct. As to the strategic concerns, though, the record in this case didn't get into it, but there was a reason why reasonable attorneys, including those in the Federal Defender's Office, would have chosen to raise this issue in a collateral proceeding instead of on direct review. There was no record at all in this case on direct appeal. A direct appeal, of course, is not an opportunity to develop a record, to obtain the very specific facts that are necessary to establishing an appearance of bias in the first place, and to obtain the sort of factual findings that might be necessary. By contrast, and I'd note that in the Atwood brief, the defendant there raised not only the 455 claim but also a due process claim. A due process claim, there is no disputing that it can be raised on a 2255 motion, that that is the opportunity to develop the factual record, to obtain the factual findings that are necessary to support that claim, whereas there is risk in raising it on direct appeal because if the defendant raises it without a factual record and loses, that's their one shot. They don't get to relitigate it. I don't understand. How do you lose anything other than taking the risk of a longer sentence by raising the ex parte context argument on direct appeal as actually happened in Atwood? Because if the defendant lost for lack of factual support in the record and lack of factual development... It's not a question of factual support. There is an elaborate report of a special committee explaining exactly what Judge Bruce did, and that was before the court in Atwood. You've got two members of the special committee here. It's all on paper. There isn't going to be a separate hearing into what Judge Bruce did. The question is what legal consequences does that have? Right, and of course that came along very late in the process, at which point the defendant would have had to simply reopen... It would have had to be a request to file a supplemental brief after argument. Right, and there are reasons why, as the district court found, a competent attorney could decline that request. First of all, obtaining relief on the appearance of bias claim was not a foregone conclusion. This court's decision in Bergeron, which would have been available to defense counsel, for example. In that case, this court found that there was no relief available. It declined relief on an appearance of bias claim under Lillieberg, even though there the district court had held the appellant in contempt and imposed sanctions against the appellant there. And what the court said is that when the appearance was too attenuated from the case, that no relief would be justified, even though that was an extremely discretionary decision. So the precedent available to counsel at the time did not show that the mere existence of discretion would have been sufficient. Of course, at the time as well, counsel would have had to overcome the fact that it had not been raised before. And of course, with this sort of appellate counsel claim, it's not just what other claims counsel could have raised in the appeal, but what she had already done. And she had already raised a claim that was very similar to another claim on which this court had actually granted relief in United States v. Lefeu. Both this case and Lefeu raised an objection to Judge Roos's reliance on comparators. This court granted relief in Lefeu, finding that, in fact, there was a procedural error that occurred. And so given the nature of the oral arguments on direct appeal in this case, the fact that in January 2019 this court granted relief in Lefeu and remanded for resentencing, counsel could have reasonably thought that she had already done enough to obtain a result for her client and that raising a new, novel, and untested issue for which relief was uncertain and faced procedural hurdles at that very late stage of an appeal was not necessary to obtain relief for her client. As Your Honors have noted as well, there was no relationship between the misconduct that led to the special committee investigation and this case at all. None of the emails had anything to do with this defendant. And so the appearance was very attenuated from this case. Essentially, the argument had to be that in every single case Judge Roos had heard during his tenure on the bench, he had an obligation to and failed to recuse. Now that's a very far-reaching claim, and this is the very worst case in which to make that sort of claim because unlike Nixon, for example, unlike even Atwood, in Atwood there were multiple strings of emails that addressed that specific case. This would be the worst possible case to raise the issue. And it was obvious that this was not an issue that escaped the Federal Defender's Office's attention. This was an issue that was being litigated at the same time in Nixon by the Federal Defender himself, Tom Patton, as well as by Peter Henderson, an experienced and capable appellate attorney. Mr. Henderson is the one who counsel came to in this case. He researched the issue. He reviewed this case to the court's precedent and came to the professional conclusion that this issue was not likely to succeed. That's the sort of professional judgment that a court owes the maximum possible deference to on a claim of ineffective assistance of counsel because that's what competent and good attorneys ought to do. They exercise professional judgment as to what sorts of claims are likely to succeed. And without the benefit of hindsight, that professional judgment on behalf of the senior members of the Federal Defender's Office did not amount to incompetence under prevailing professional norms. It was the prevailing professional norm. There were 9 or 10 cases that this court decided after the public disclosure of the Nixon emails. Only one of those involved an appearance of bias case. An attorney who does what 90% of attorneys do isn't below the prevailing professional norms. Thank you, Your Honors. Thank you, counsel. Anything further, Ms. Eisenman? Yes. Okay. A few points. What's the downside to erasing it? Really, there isn't any, and it's certainly not in the record. There's a lot of speculation going on from the government about what the Federal Defender did. What about a higher sentence? A higher sentence, definitely, but that is not in the record as the reason why they rejected this. What's in the record and what Attorney Pollack testified to is that she recalled vaguely putting this off. This is after January 2019 because she didn't even consider it before that time. After January 19, she pushes this off because she's got a trial coming up. Okay, totally reasonable. A death penalty case, right? Death penalty case, yes, yes. So very reasonable, understandable. She puts it off to other people in her office who are very competent. All she remembers after that point is receiving some email back from she thinks Henderson with some case sites in it saying that this is not likely to succeed. That's all the testimony is. Nobody finds this email. Nobody brings up any sort of cases that might have been in there. And the fact is, like, after this point, the government concedes that there's a violation. So even if there were some cases out there and the government has never cited one case that would have indicated that this was a losing issue. So what cases could have been in that email? Even if that was the case, the government then files its brief and concedes that there's a violation. So that totally puts an end to what the government's going to be, you know, what counterarguments there could possibly be. That is unreasonable. It's a misapprehension of law. If there were cases in there, it's a misapprehension. It's unreasonable to get the government's response brief that concedes this issue and not to look into it or try to reopen. It's unreasonable after this special committee specifically mentions appearance of bias and says that appearances matter. That's not reasonable. There is nothing in the record to show that the reason this was rejected was because Farrington or his counsel believed that this was too great of a risk. Sorry. This is not far-reaching. This is not going to open some sort of floodgates here, okay? This was a case where there are specific facts, right? This was a federal defender who had already received the emails. This was the case that in January 2019, she gets an email from the government with the Atwood brief and the follower decision. There is no evidence that that's what happened in all the rest of these cases. And this is a case where he was sentenced while some of these emails, these ex parte emails were still happening. So that doesn't, it's not going to open some sort of floodgates. It's not every case he ever had. This is a case that was pending during the time that he was communicating ex parte. And this was a case where there was a lot of discretion exercised at sentencing. My understanding, please correct me if I'm wrong, is that none of the ex parte emails concerned this case. Correct. Okay. Yes. I agree with that. I don't think that that is dispositive in the least. I understand that legal position.  That is potentially important, and it is a difference between this case and Atwood. In Atwood, you know, I was counsel in Atwood. I don't recall there being a lot of emails about Atwood. Maybe his case was mentioned one in a very minor place, but that's not what we relied on. We relied on the fact that there was this pattern of ex parte communication with the government, and that's what's the saying here, right? It's not the defendant that we're relying on. It's the government. It's this pro-government bias. That's what's disqualifying here, and it's disqualifying conduct because it's ex parte emails, which makes it different than some of these other cases, and it makes it a bigger deal. So this was improper conduct. Everybody knows it's improper conduct, and it's going on while this case is pending, and it's with the government, which is the opposing party in the case. So I just don't get it. When you say everybody knows it's improper conduct, did you read the special report? Yes. The special committee's report? Yes. Judge Bruce not only contended that it was indeed completely proper conduct, he had a lawyer submit a brief making an argument to that effect, based, as it turns out, on an ethics rule that had been repealed before he acted. But the statement everybody knows it's improper conduct is very difficult to sustain. Well, I should say under the Code of Judicial Conduct. The current one. It is clear. There was a different one when Judge Bruce took the bench, and it changed early in his career. Okay. So it was in effect. Rules about ex parte conduct, what kinds of things you can have ex parte messages, changed, and he was not aware of that. Okay. And as this court often says, ignorance of the law is no defense. So thank you. All right. Thank you very much. And we appreciate your willingness to accept the appointment in this case and your assistance to both court and client. The case is taken under advisement, and the court will be in recess.